BRADT, In re. See Case No. 5,993.

BRADY v. AMERICAN STEAMSHIP CO. See Case No. 10,945.

---

## Case No. 1,794.

### BRADY v. ATLANTIC WORKS.

[4 Cliff. 408;[1] 10 O. G. 702; 2 Ban. & A. 436.]

Circuit Court, D. Massachusetts. Sept. 29, 1876.[2]

PATENTS—APPROPRIATION BY THE UNITED STATES —INFRINGEMENT—INJUNCTION — PLEADING AND PROOF.

1. Inventions secured by letters-patent are property, and are as much entitled to protection as any other property consisting of a franchise.

[See Star Salt Castor Co. v. Crossman, Case No. 13,321; Smith v. Elliott, Id. 13,041.]

2. Private property cannot be taken for public use without just compensation, and the provision is as applicable to the government as to individuals, except in cases of extreme necessity, in time of war, and of immediate and impending public danger.

[See Cammeyer v. Newton, 94 U. S. 225; James v. Campbell, 104 U. S. 356.]

3. In such cases of the seizure, or appropriation of private property to public use, the officer in the public service is not a trespasser; but the government is bound to make full compensation to the owner of the property appropriated.

4. Allegations, in an answer, that the plans and specifications of the alleged infringing machine were furnished by a government agent, and that he was the real inventor of the machine, and not the patentee, must be proved before they can constitute a valid defence to a charge of infringement.

[Cited in Herring v. Nelson, Case No. 6,424.]

5. In the United States, the sovereign power of government, cannot use an invention patented under the federal laws, or authorize third persons so to do, without the license and permission of the patentee or owner of the patent.

[See Campbell v. James, Case No. 2,361; Colgate v. International Ocean Tel. Co., Id. 2,993; McKeever v. U. S., 14 Ct. Cl. 396; Fletcher v. Blake, 26 Lawy. Ed. Sup. Ct. Rep. 156; Hubbell's Case, 5 Ct. Cl. 1; Burns v. U. S., 4 Ct. Cl. 113, affirmed 12 Wall. (79 U. S.) 246.]

6. The patent law in this country secures to inventors, for a limited period, the exclusive right to their inventions in the United States.

7. Contractors of the government of the United States derive no power in a case like the

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]
[2] [Final decree reversed by supreme court in Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225.]

present, by virtue of their contract, to take the property of private individuals without their consent, or apply the same to fulfil their contract obligations.

In equity. This was a bill [by Edwin L. Brady against the Atlantic Works] founded upon letters-patent of the United States for certain improvements in dredging-boats. The chief defence was that the respondents had built the alleged infringing boat under a contract with the government, and that they could not therefore be restrained from so doing. The question of injunction was deferred for further consideration. Decree for an account.

J. S. Abbott, for complainant.

This case is really defended by the United States government; and it is claimed in defence that the right of the government is paramount to the plaintiff's. Whatever may be the law in England, that is not the law of the United States. Const. U. S. art. 1, § 8; Act Cong. July 4, 1836. "No right under the constitution and laws having been reserved to the United States government to use a patent without license of the patentee, when the government uses a patent, the proper department should allow reasonable compensation for its use." 9 Op. Attys. Gen. 135. At the hearing on motion for a preliminary injunction in this case, Mr. Justice Clifford took the same view, and held that the government had not the right to use this patent. The defendants are therefore liable, precisely as though they had contracted to build the "Essayons" for a private individual. They were the real contractors of the "Essayons." They furnished all the labor and materials required. The government became liable for nothing, excepting to pay the defendants the stipulated price for the vessel, on her delivery to and acceptance by the government; and with the further exception that, inasmuch as the government furnished the plans and specifications involving infringement of plaintiff's patent, it incurred an equitable, if not a legal liability, (which it has assumed by undertaking the defence in this case,) to protect the defendants, and to pay the amount which the plaintiff may recover against them because of their infringement. The defence therefore rests on no better ground than it would in a case brought by plaintiff against the government to recover for use of his patent in the court of claims; where judgments have been rendered against the government for similar claims by other patents.

Lothrop, Bishop & Lincoln, for respondents.

This is a proceeding in substance to restrain the United States from building a vessel designed and to be used for the purpose of dredging the mouth of the Mississippi river. The vessel was designed by officers in the engineer corps of the United States army, acting under orders from the war department. The nominal defendants are the mere instruments employed by the government to carry out its design and construct the vessel. They have agreed, by their contract, to build the vessel for the United States, according to specifications and plans furnished by the war department, and under the direction and supervision of a United States officer. The vessel is to be built in the same way the monitors and many other vessels were built during the war. Upon this, we say:—Even if the plaintiff's patent is a valid one, and if the construction of the "Essayons" is such as would otherwise constitute an infringement of it, —which we deny,—the United States, by its grant to the plaintiff of the privileges conferred by the patent, has not excluded the use of the thing patented by itself. The nature of the grant of a patent right by the sovereign power is not such as to exclude its own use of the thing granted. Feather v. Queen, 6 Best & S. 257. The nature of a patent right granted by the government is that of a prohibition to any of its subjects, except the patentee, from using the invention. It extends no further, and is not intended to deprive the government itself of its use. Even if this position be not correct, and assuming all that the plaintiff claims, i. e. a valid patent, infringement, and that the grant of a patent-right excludes the use of the thing patented by the sovereign power, still the present proceeding cannot be maintained.

This is a bill in equity to prevent the use of the thing patented; the object sought is restrained by injunction; if obtained, it will be an injunction against the United States as completely as if it were so in form. The operations of the government in war and in peace cannot be stopped in this mode. The United States cannot be prevented from building monitors for service in the war, or from building dredge-boats to be used at the mouth of the Mississippi river, by an injunction issued against the Atlantic Works, the agent, and means employed to build them. If the operations of the government could thus be interfered with in these instances, they are liable to be stopped at all times, in any matter, by the claim of a patentee. We submit that a bill in equity seeking for an injunction, whose object and result must be to prevent the use of the article claimed as patented, and thus to thwart the operations of the government, cannot in such a case be maintained; but that a patentee (assuming that his claims in all other respects are made out) is confined for relief either to,—petition to the court of claims, or, action at law against the officer or agent committing the tort. The difference between proceedings in equity to restrain the use of the thing patented and an action at law seeking damages, in such a case, is that the former puts

its power upon the designs of the government to prevent their accomplishment, and interferes to prevent the government from carrying out its plans, while the latter affords compensation without such interference. While the justification of a superior officer will constitute no defence to an action at law for an act committed by him, for which he would otherwise be liable. Little v. Barreme, 2 Cranch [6 U. S.] 170; Mitchell v. Harmony, 13 How. [54 U. S.] 115. The fact that the superior authority, under whose command an act is to be done, is the government; and that the act itself is an exercise of the proper powers of government will prevent the court from attempting to interfere with the act itself, or to restrain it by judicial process. The building of the vessel in question was an exercise by the United States of its governmental authority and power; and while it may be admitted that such an act will not prevent the recovery of whatever compensation any person should receive for any damages he may have sustained, it cannot be contended that it authorizes the imposition of judicial authority to prevent it. The judicial department of the government will not thus interfere to prevent the action of the executive department. The case of U. S. v. Burns, 12 Wall. [79 U. S.] 246, does not conflict with the principles above stated. That was a petition in the court of claims seeking compensation from the United States for the use of a patented article, and the decree was in favor of the petitioner. The case simply decides that the petitioner might have reimbursement in that mode. It is no authority for the proposition that the executive department of the government may be restrained, in operations of the necessity of which it alone must be the judge, by the judicial department. We refer the court to cases of Mississippi v. Johnson, 4 Wall. [71 U. S.] 475; and especially as being directly in point, and as containing a full discussion of the authorities and a very clear statement of the correct doctrine, to Gaines v. Thompson, 7 Wall. [74 U. S.] 347. The language of the court in the latter case, on pages 351, 352, both as to mandamus and injunction, is especially in point.

CLIFFORD, Circuit Justice. Inventions secured by letters-patent are property in the holder of the patent, and as such are as much entitled to protection as any other property, consisting of a franchise, during the term for which the franchise or exclusive right or privilege is granted. Seymour v. Osborne, 11 Wall. [78 U. S.] 533. Holders of letters-patent enjoy, by virtue of the same, the exclusive right and liberty of making and using the invention therein secured, and of vending the same to others to be used, as provided by the act of congress passed for the purpose. 16 Stat. 201. Private property, the constitution provides, shall not be taken for public use without just compensation, and it is clear that that provision is as applicable to the government as to individuals, except in cases of extreme necessity, in time of war, and of immediate and impending public danger. Exigencies of the kind do arise where the prohibition does not apply to the public, and in such cases it must be conceded that the officer in the public service is not a trespasser, but it is equally true that the government is bound to make full compensation to the owner. Mitchell v. Harmony, 13 How. [54 U. S.] 134; U. S. v. Russell, 13 Wall. [80 U. S.] 627.

Letters patent [No. 72,360] [3] for a new and useful improvement in the construction of boats for dredging under water were granted to the complainant on the 17th of December, 1867, as appears by the original patent annexed to the bill of complaint. Nothing is suggested to show that the patent is not regular in form, and the complainant alleges that the respondents are making and constructing a dredge-boat of the same construction as that described in his specification, and which is an infringement of his patent, and he prays for an injunction and for an account of all such gains and profits as they, the respondents, have received by their unlawful and wrongful acts and doings. Proofs were taken and hearing was had, when the respondents requested leave to amend their answer. Leave to that effect having been granted, and new proofs taken, the cause is now submitted, with additional briefs, to the court, upon the pleadings as amended, with all the proofs in the cause. Redress for the unlawful use of a patent cannot be obtained unless the party seeking it alleges and proves that he is the original and first inventor of the improvement, and that the patent has been infringed by the party against whom the suit is brought. Both of those allegations must be proved, but it is well-settled law that the patent, if regular in form, and introduced in evidence, affords a prima facie presumption that the alleged inventor is the original and first inventor of what is therein described as his improvement. Under such a rule nothing is here open for examination except the question of infringement and the defences set up in the answer. Seymour v. Osborne, 11 Wall. [78 U. S.] 538.

Considered together, the answer and the amendments thereto may be regarded as setting up the following defenses:—

1. That the complainant is not the original and first inventor of the improvement.

2. That M. D. McAlester furnished the plans and sketches of the described dredging-boat, and that he was the real inventor of the improvement; that the said McAlester was the sole inventor of the same, and that the complainant fraudulently, wrongfully, and falsely represented himself as the original inventor, and that the patent was

---

[3] [From 2 Ban. & A. 436.]

wrongfully and inadvertently issued in ignorance of the facts, and is wholly inoperative and void.

3. That the dredging-boat in question was built and completed under the inspection and supervision of an officer of the United States, according to the plans and specifications furnished by the government of the United States; and that the said plans and specifications were the result of the said officer's own study, observation, and experience, and that to the extent that said plans and specifications were original in any particular, he was the author and inventor of the same.

Superadded to that, the respondents also allege that in building the said dredging-boat, and in following the said plans and specifications, they were the mere agents and executive hand of the federal government, which was the real constructor of the same, all the work thereon having been done under the immediate supervision, and in obedience to the orders, of the said government, and in conformity with the plans, specifications, and directions "which the said government furnished."

Two claims are set up by the patentee:—
1. A dredging-boat, constructed with a series of water-tight compartments, so proportioned and arranged that, as they are filled with water, the boat shall preserve an even keel, and the dredging mechanism be brought into action without any adjusting devices.
2. He claims the combination of the "mud fan" attached to a rigid shaft, and a boat containing a series of water-tight compartments, so adjusted as to cause the boat to settle on an even keel as the compartments are filled with water, and also a pump for exhausting all the water from the compartments.

Reference is made to the drawings as making part of the specifications, and the patentee states that the excavator consists of a strong boat, propelled by one or two propellers placed in the stern. Two propellers are preferred, as affording greater power, and rendering the boat more manageable when steering in crooked channels. Steam engines of ordinary construction are employed to drive the propeller in the usual manner. Near the bow of the boat is placed another steam engine, to drive what the patentee calls the "mud fan," which projects from the bow of the boat and in front of the same, and is formed by a set of revolving blades, turned like those of the propellers, by a shaft passing through what is called a stuffing box in the specification. The blades for this purpose are shaped somewhat like those of a propeller, but the patentee states that they are sharper on their fronts, and less inclined on their face. These blades, he says, should extend about two feet below the bottom of the boat, their object being to displace the sand and mud on the bottom by their rapid revolution, and by stirring

them up to mix the same up with the water so that they may be carried off by the current, to which he adds, that the "mud fan" assists the propellers to draw forward the boat as well as to stir up the mud and sand. All the engines, it is represented, may be driven by one set of boilers, placed midships, and in order that the "mud fan" may be brought in contact with the bottom, the patentee states that he constructs the boat with a series of water-tight compartments, placed in the bow and stern, and on each side of the centre, midships, into which the water may be permitted to flow, through pipes, so as to sink the vessel to the required depth, the compartments being so placed and proportioned that the vessel shall sink with an even keel, by which the effective action of the "mud fan," the propellers, and the steering apparatus, is preserved, leaving the boat manageable at any depth of water. Such is the general description of the boat, to which it is added, that a large pump, driven by the engine, is connected by pipes with all the compartments, so that the water may be pumped out when necessary to raise the boat. Argument to show that the invention was designed as an improvement in constructing a dredging-boat, and the apparatus to render such a boat an effective machine for that purpose, is unnecessary, as the proposition is supported by every line of the descriptive part of the specification.

Two suggestions are made, as tending to show that the complainant was not the original and first inventor of the improvement. 1. That its construction and mode of operation are the same as the dredge-boat Enoch Train, previously constructed, and publicly used in 1859, for the purpose of deepening the channel at the mouth of the river Mississippi. 2. That Gen. M. D. McAlester made the original plans and specifications described in the patent, and that he is the author and inventor of whatever is new and useful in the patented improvement.

Much discussion of the first suggestion is unnecessary, as it is quite clear that the evidence introduced by the respondents is not sufficient to show that the Enoch Train embodied the same construction and mode of operation as the patented improvement. Instead of that, the clear inference is, that it did not, and of course it is not sufficient to overcome the prima facie presumption that the patentee is the original and first inventor of what is secured to him by his patent. Nor is the proof introduced to support the second suggestion sufficient to warrant a finding, either that the person named made the plans and specifications, or that the complainant surreptitiously obtained the patent. Allegations, like those in the answer, that the plans and specifications were furnished by the agent of the government, and that the agent named was the inventor of the improvement, require to be proved before it can be admitted that they constitute a valid

defence to the charge of infringement. They are not proved in the case before the court, and consequently the defence must be overruled. Both propositions therefore are rejected, and the finding of the court on both of those points is in favor of the complainant. Suppose that is so, still the respondents insist that they worked under the federal government, and that the nature of a patent right is such that the sovereign power may use it at pleasure, or authorize third persons to use it for the public benefit. Support to that view is certainly found in the authority cited by the respondents, and perhaps it may be assumed that such is the rule in the parent country. Feather v. Queen, 6 Best & S. 283.

By that case it is decided that the patent prohibits all of the subjects of the sovereign, except the patentee, from using the invention, but that it extends no further, and is not intended to deprive the government itself of the use of the invention. Patents in that country are monopolies, granted by the sovereign, and may be granted or refused in the royal discretion. Power to legislate upon the subject in this country is conferred upon congress by the constitution, by securing for limited periods to inventors the exclusive right to their discoveries. Congress has legislated, and the provision is, that persons who have made inventions of the kind specified in section 24 of the patent act [1870], may "obtain a patent therefor." 16 Stat. 201. Every patent shall "contain a grant to the patentee, his heirs or assigns, for the term of seventeen years, of the exclusive right to make, use, and vend the said invention or discovery throughout the United States." Section 22, p. 201. Language so explicit and unambiguous admits of no exception, even if it would be competent for congress to reserve such a right to the government. Such an exception is not made, and cannot be implied. Conclusive support to that proposition is found in a recent decision of the supreme court (U. S. v. Burns, 12 Wall. [79 U. S.] 252), where the court say, speaking of an invention made by an officer of the United States, and secured by letters-patent, that "the government cannot, after the patent is issued, make use of the improvement any more than a private individual, without license of the inventor, or making compensation to him." Nothing can be plainer than that proposition, for two reasons: 1. Because the invention, when thus secured, is property, and as such, is entitled to the same protection as any other property. 2. Because private property cannot be taken for public use without just compensation except in cases of extreme necessity, in time of war, or of immediate and impending public danger. Nothing of the kind is shown in this case, and of course the case falls directly within the prohibition.

Sufficient appears to warrant the conclusion that the respondents were employed by the government to build a dredge-boat, but contractors of the government derive no power in a case like the present, by virtue of their contract, to take the property of private individuals without their consent, and to use and apply the same in fulfilling their contract obligations. Such a contractor may be the agent of the government to build a ship or dredge-boat, but he is not the agent of the government to seize and appropriate whatever materials he may select to fulfil his obligations. Infringement is impliedly admitted, and the other defences set up in the answer are overruled. Were infringement not admitted, still the proofs are sufficient to sustain the bill of complaint, which is all that need be said upon the subject.

Decree for an account. The question of an injunction is deferred for further consideration.

[NOTE. The master to whom the matter was referred for the purpose of taking an account of the profits received by the defendants from the infringement reported the sum at $6,604.82. Both parties excepted, but their exceptions were overruled, and a final decree, in accordance with the report, was rendered October 9, 1878, with costs; and from this both parties appealed to the supreme court, where Mr. Justice Bradley rendered an opinion reversing the decree of the circuit court, with instructions to dismiss the bill of complaint, holding that the letters-patent granted to the complainant below were invalid for want of novelty and invention; the placing of a screw for dredging at the stem of a boat, though qualified by the natural incidents and adjuncts of its application, being a principle not sufficiently substantial for patenting. Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225.]